1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------------x
    UNITED STATES OF AMERICA
3                                       15 CR 252(PKC)
                versus
4                                       U.S. Courthouse
    RAFAEL SALGUERO,                    225 Cadman Plaza East
5                                       Brooklyn, NY 11201
                        Defendant.      December 6th, 2018
6   ------------------------------------x 12:00 Noon

7
                TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
8                   BEFORE THE HONORABLE PAMELA CHEN
                    UNITED STATES DISTRICT JUDGE
9

10                          APPEARANCES

11
    For the Government:    RICHARD DONOGHUE
12                         UNITED STATES ATTORNEY
                           EASTERN DISTRICT OF NEW YORK
13                         271 Cadman Plaza East
                           Brooklyn, New York 11201
14                         BY: SAMUEL NITZE, ESQ.
                               KEITH EDELMAN, ESQ.
15                         Assistant United States Attorneys

16  For the Defendant:     FREEMAN, NOOTER & GINSBERG,
                           75 Maiden Lane
17                         Suite 503
                           New York, New York 10038
18                         BY:  LOUIS FREEMAN,ESQ.

19  Also Present:          Mario Michelena
                           Certified Spanish Interpreter
20

21  Court Reporter:        LISA SCHMID, CCR, RMR
                           Official Court Reporter
22                         225 Cadman Plaza East
                           Brooklyn, New York 11201
23                         Phone:  718-613-2644
                           Fax:  718-613-2379
24
    Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-aided transcription.

1          THE CLERK:  Criminal Cause for Sentencing, Docket 15
2   CR 252, United States versus Rafael Salguero.

3          Will the parties please state their appearances for
4   the record?

5          MR. NITZE:  Sam Nitze and Keith Edelman for the
6   United States.  Good afternoon, Your Honor.

7          MR. EDELMAN:  Good afternoon.

8          THE COURT:  Good afternoon.

9          MR. FREEMAN:  Good afternoon, Your Honor.  Louis
10  Freeman for Mr. Salguero.  He's seated to my right.

11         THE COURT:  Good afternoon to both of you.

12         And we'll also have our previously-sworn interpreter
13  state his name for the record.

14         THE INTERPRETER:  Certified Spanish Interpreter,
15  Mario Michelena.

16         THE COURT:  Good afternoon, Mr. Michelena.

17         So we're here for sentencing in this matter.  I'll
18  start off by putting a number of things on the record.

19         The defendant pled guilty before me pursuant to a
20  plea agreement with the Government on October 27th, 2016.  He
21  pled guilty to Counts 1, 42, 47 and 65, which charged him with
22  a RICO conspiracy and a wire fraud conspiracy.

23         I have received and reviewed in preparation for
24  sentencing the Pre-sentence Report, dated November 16th, 2018,
25  and I've also received a sentencing recommendation from the

```
 1    Probation Department of the same date, which recommends a

 2    sentence of 18 months, to be followed by two years of

 3    supervised release.

 4              In addition, I've received and reviewed the defense

 5    sentencing submission, dated December 3, 2018, and the

 6    Government's sentencing submission of the same date.

 7              Is there anything else I should have from the

 8    Government?

 9              MR. NITZE:  Nothing further.  I would just note for

10    a clarification for the record, Count 47 was a money

11    laundering conspiracy, not a wire fraud conspiracy, but in

12    terms of the materials, I think you have it all.

13              THE COURT:  Thank you very much.

14              So the defendant pled guilty to RICO conspiracy,

15    wire fraud and money laundering conspiracy, just to clarify.

16              All right.  Just so everyone knows, the Government

17    did hand up to my deputy a Preliminary Order of Forfeiture,

18    which I will sign later.

19              I assume, Mr. Freeman, you saw this before?

20              MR. FREEMAN:  I have seen it before and I have a

21    copy.

22              THE COURT:  Okay.  All right.  That's all I have

23    other than what I stated earlier.

24              Mr. Freeman, should I have anything else from you?

25              MR. FREEMAN:  No.
```

```
 1              THE COURT:  Okay.  Let's -- first of all, is anyone

 2    seeking an evidentiary hearing on any issue relating to

 3    sentencing?

 4              MR. NITZE:  No, Your Honor.

 5              MR. FREEMAN:  No.

 6              THE COURT:  Let's turn now to the Guidelines

 7    calculation.  As the parties are aware, the Probation

 8    Department has calculated a total offense level of 25, which

 9    corresponds to an Advisory Guideline range of 57 to 71 months,

10    and I believe that both parties are in agreement with that

11    Guidelines calculation.

12              Is that right, Mr. Nitze?

13              MR. NITZE:  Yes.

14              THE COURT:  And Mr. Freeman?

15              MR. FREEMAN:  Yes.

16              THE COURT:  All right.  So I will adopt the

17    Probation Department's Guidelines calculation, and we'll

18    operate based on an Advisory Guideline range of 57 to 71

19    months.

20              Is there any objection to any other part of the

21    Pre-sentence Report from the Government?

22              MR. NITZE:  No, Your Honor.

23              THE COURT:  From you, Mr. Freeman?

24              MR. FREEMAN:  No.  We may -- passing reference in

25    our submission to the bail paragraph on the first page of the
```

```
 1   Pre-sentence Report; however, when bail was set, that was the
 2   correct amount.  So it's really not an objection.
 3               THE COURT:  Okay.  But it has been modified since
 4   then, is that right?
 5               MR. FREEMAN:  Yes.
 6               THE COURT:  Okay.  So we'll leave it as is because
 7   it does state accurately what the original bail arrangement
 8   was, and obviously, the docket will reflect any modifications
 9   since then.  I don't think it relates to sentencing, in any
10   event.
11               Would that be fair to say?
12               MR. FREEMAN:  Fair to say.
13               THE COURT:  All right.  So let's turn now to the
14   sentencing factors.  I've reviewed the submissions from both
15   parties.
16               And Mr. Freeman, would you like to be heard further?
17               MR. FREEMAN:  Yes, Your Honor.
18               If there was a book about Mr. Salguero, and the last
19   three years of his life, we would call it, "From Humorous To
20   Humility in Sixty Seconds Flat."  This is a good man.  I've
21   gone gotten to know him well after these three years.  He's
22   been in my office between fifty and a hundred times.  He's a
23   good man who did bad things.
24               But then he did the right thing.  To make amends for
25   he did that was wrong, he accepted responsibility
```



18          Mr. Salguero is a lawyer.  He was not actively

19   practicing because of his association with football.  It was

20   football that was his life, and his football was his life's

21   blood.  He has a family with four children, two of whom are

22   also lawyers.

23          As I indicated in my submission, Mr. Salguero is 73.

24   He's not in the best of health.  He has been under a doctor's

25   care because of Type 2 diabetes and high blood pressure.

1    There have been flare-ups, but his health is under control --

2    his health problems, I should say, are under control.  The

3    likelihood of his reoffending is virtually nonexistent.

4         I'm now going to turn to a section of my remarks

5    called, "How The Mighty Have Fallen."  Mr. Salguero's shame is

6    palpable, not just because he ruined his and his family's

7    reputation, not just because his name and face is all over

8    newspapers in Guatemala and other places, but because of what

9    he did to ruin the good name of football in Guatemala and

10   around the world.

11        Guatemala was -- excuse me.  Sorry.  Football was

12   good to him.  He traveled around the world as an emissary for

13   football.  He started off as a player.  He's been -- spent his

14   whole adult life being part of football, and as I said, it was

15   good to him.  He wasn't so good to it in the end.

16        He met dignitaries.  He felt great stature, and all

17   this came tumbling down and now all he feels is shame.

18        We're not asking you to feel sorry for him.  We're

19   not suggesting he is the victim, but we are suggesting that

20   the Court can and should take into consideration what his life

21   has been like since the arrest as part of the sentencing

22   factors, and consider what the punishment has been for him

23   these last three years.

24        Some of this punishment includes living ███████

25   ████████████████████████████████████ on strict

1    conditions of house arrest, living far from home, living far

2    from his family, not being there for his son's marriage, not

3    being there for his brother's death, being alone most of the

4    time, waiting for judgment day.

5            It's been hard for him.  I've seen his suffering.

6    I've seen him cry.  But he understands why it has to be this

7    way, because he committed crimes, inexcusable crimes, and he

8    has to pay for what he did, but ▮▮▮▮▮▮▮▮▮▮ he

9    demonstrated his sincerity about his remorse.  He used these

10   three years waiting for judgment day to come to grips with

11   reality -- the reality that he has no one to blame but

12   himself.

13           For those reasons and others referenced in the

14   Government's letter and my letter, we ask that the Court

15   impose a sentence of time served, and I think the Government

16   will discuss why supervised release is appropriate.

17           THE COURT:  Thank you very much, Mr. Freeman.

18           Mr. Nitze, would you like to be heard further beyond

19   your written submission?

20           MR. NITZE:  Just briefly, Your Honor, if I may

21   remain seated --

22           THE COURT:  Yes.

23           MR. NITZE:  -- to use the microphone?  Thank you.

24           First off, as readily acknowledged by Mr. Freeman

25   and also by his client, the crimes of conviction are serious.

```
 1    Your Honor has considered similar offenses already in the

 2    context of this case, and we said a fair amount about that

 3    already.

 4           Mr. Salguero reached the very highest levels of the

 5    administration of the sport.  He was one of three

 6    representatives from our region from CONCACAF on the FIFA

 7    Executive Committee.  He obviously reached the top of the

 8    Guatemalan Federation and was a person who was in a position

 9    to influence and direct the sport, and he abused that position

10    to enrich himself.

11           And that was a part of a far broader -- he became a

12    part of a broader and deeper culture and pattern of corruption

13    that gutted the integrity of the sport over a period of time,

14    and those are serious offenses and they are made more so, and

15    we are sitting here today because they also took aim at the

16    U. S. financial system.  They relied on the banking

17    institutions here in part, generated profits here, and we have

18    gone through that, as well, the various connections to --

19    domestic connections of conduct.

20           The defendant, as Mr. Freeman said, he -- while he

21    committed those offenses, he, at the end, accepted

22    responsibility quickly for committing those offenses ▓▓▓▓▓▓▓

23    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

24    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

25    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```



1

2

3

4

5

6          And so for those reasons and the others referenced

7  in our submission, we ask that the Court impose a sentence

8  below the applicable Guidelines range.

9          THE COURT:  Thank you very much, Mr. Nitze.

10          I'll hear from you, Mr. Salguero, if you'd like to

11  be heard at this time.

12          THE DEFENDANT:  (Speaking in Spanish.)

13          THE COURT:  Let me stop you, so the translator can

14  translate.

15          THE DEFENDANT:  (Through the interpreter.) Thank you

16  very much, Your Honor.

17          First of all, I want to thank you for this

18  opportunity to speak and I want to say that I feel I deeply

19  regret what I did.  I deeply regret several mistakes that I've

20  made, but I also can see that they were part of a tsunami that

21  carried with it all of our worldwide soccer, and what's coming

22  from many years back, from the late Eighties.

23          And although I was already involved in soccer at

24  that time, I didn't have the kind of position I ended up

25  having.  Everything has been already detailed.

```
 1              I just want to thank you, and I want to apologize

 2    again to everybody and to the sport of soccer in general, and

 3    also particularly to my family, who ended up suffering with me

 4    for these three years because of the separation, and on

 5    myself.

 6              And I don't think I have anything else to add

 7    because everything had been detailed already, including in

 8    writing, and it's known by all the parties here and both my

 9    attorney and the prosecutor has explained everything.

10    ████████████████████████████████████████████████████

11    ████████████████████████████████████████████████████

12    ██████████████████████████████████████

13              THE COURT:  All right.  Thank you very much,

14    Mr. Salguero.

15              I have considered the relevant factors set forth by

16    Congress in Title 18, United States Code, Subsection 3553(a),

17    which includes the Advisory Guideline range in this case, to

18    ensure that I impose a sentence that is sufficient but not

19    greater than necessary to achieve the purposes of sentencing.

20              Those purposes include the following:  The need for

21    the sentence to reflect the seriousness of the crime, to

22    promote respect for the law, to provide just punishment for

23    the offense, to deter criminal conduct by Mr. Salguero, as

24    well as others who would choose to engage in the same type of

25    conduct, and to protect the public from future crime by
```

1    Mr. Salguero.  I've also considered the nature and

2    circumstances of Mr. Salguero's offenses, as well as his

3    personal history and characteristics.  So let me discuss those

4    factors in more detail.

5              First of all, there's no doubt that this is a

6    serious crime or a serious set of crimes committed by

7    Mr. Salguero.  It's obvious -- and I won't belabor that

8    point -- this scheme that Mr. Salguero and many, many other

9    soccer officials participated in, as well as media executives,

10   rotted the very core of international professional soccer, and

11   made it -- rendered it a very sorry situation and did and will

12   for a long time.  It certainly has given a black eye to this

13   sport around the world.

14             In addition, there was genuine deprivation of funds

15   to various soccer organizations as a result of the conduct

16   engaged in by Mr. Salguero, and others.  And these are

17   organizations that are dedicated or were supposed to be

18   dedicated to providing important social and cultural support

19   in countries where that's greatly needed.  So by depriving

20   these organizations of his honest services, he did a great

21   disservice not only to the soccer community, but to his

22   country and community at large.

23             I'm hoping that Mr. Salguero's statement about being

24   caught up in this tsunami doesn't reflect a failure to

25   understand that regardless of the fact that he was in some way

1    awash in a culture that was completely corrupt, that it still

2    was -- that this was a collective moral failure that he

3    actively participated in and could have resisted very easily.

4    He could have simply said no.

5              Tsunami suggests a lack of control, a lack of will,

6    a lack of self-determination, and I don't see the situation at

7    all that way.  I assume -- though I have yet to meet them --

8    there were many soccer officials who actually did say no and

9    they are not defendants in this case as a result of it.

10             So he could have easily done his job, his

11   responsibility, his duty honestly, and according to the

12   ethical code that he swore to when he joined FENAFUTG,

13   F-E-N-A-F-U-T-G, CONCACAF and FIFA, but he chose not to, and

14   that was a moral decision that he made and now he is paying

15   for.

16             The defendant's involvement in this crime was also

17   not insignificant.  As set forth in the Pre-Sentence report,

18   he conspired to get $1.655 million in bribes and he sought

19   to -- albeit unsuccessfully in large measure -- get this

20   money.  That is a magnitude of bribery and greed that

21   obviously is significant, and it's also reflected in the

22   Guidelines themselves.  So this was not an insignificant set

23   of crimes committed by Mr. Salguero.

24             Now, of course, on the other side of this balance

25   sheet is everything that has been discussed at some length, so

1  I'll touch upon it more lightly, by defense counsel and the

2  Government:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          And also, he has demonstrated genuine rehabilitation

19  and remorse, and I believe a genuine desire not to reoffend or

20  recidivate; therefore, I do find, as the defense has argued,

21  there isn't a great risk of recidivism here, in large part

22  because of Mr. Salguero's own change in his behavior, and also

23  his age, and also because he will have little opportunity to

24  reoffend because one of the conditions of his sentence will be

25  to not serve in any official capacity in any soccer

1    organization through the remainder of his life -- not that

2    there should be such an opportunity offered to him, but

3    nonetheless, he will be precluded from doing so.  I don't have

4    a great concern there about recidivism or the need to protect

5    the public from future crimes by Mr. Salguero.

6

7

8

9

10

11

12

13

14

15

16

17

18            With respect to punishment, I believe that purpose

19    has been partially served by the time that Mr. Salguero has

20    spent in what is effectively home confinement for the last

21    three years in a foreign country under very restrictive

22    circumstance,

23

24

25



 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16       Lastly, I have considered the need to avoid
17  unwarranted disparities between similarly-situated defendants,
18  and there is at least one here who I've previously sentenced
19  to a term of time served.  One distinguishing factor is that
20  defendant also happened to have been in jail in I think
21  Switzerland for some period of time.  So he actually did some
22  actual jail time, but nonetheless, I do find these two
23  defendants comparable in many ways,
24
25

1          So putting all that together, I am going to impose a

2    sentence of time served here.

3

4

5          That time served sentence will be followed by two

6    years of supervised release.  I recognize -- and so does the

7    Probation Department -- that Mr. Salguero would likely be

8    returning to his country.  Certainly, he is subject to, I

9    assume, deportation, but he can self-deport, and hopefully

10   then avoid Immigration custody.

11         But the Probation Department has indicated to me and

12   stated in their recommendation that they will still -- or they

13   still intend to supervise Mr. Salguero's release,

14

15                      So therefore, this is not a meaningless

16   sentence or part of the sentence.  So that would be for two

17   years, and it will have the following special conditions.

18

19                                          He will also

20   cooperate and abide with all instructions from Immigration

21   authorities.  So to the extent that he seeks to self-deport

22   and Immigration says no, he will have to follow whatever rules

23   they impose upon him, and that also applies if they let him

24   self-deport.  He will have to follow their instructions.

25         If deported, or excluded, the defendant will not

1   illegally enter the United States. ▓▓▓▓▓▓▓▓▓

2   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Salguero should not take it

5   upon himself to enter the U. S. illegally because that would

6   violate his supervised release.

7            Lastly -- and this is perhaps real punishment to

8   him -- he will not serve in any official role or capacity or

9   hold any title within FIFA, CONCACAF, FENAFUTG or any other

10  professional soccer organization.

11           And then last -- those are all the conditions of his

12  supervised release.

13           With respect to a fine, I'm not going to impose one

14  because based on Mr. Salguero's financial circumstances and

15  the priority of restitution and forfeiture, I don't think he

16  has the ability to pay an additional fine.  I am going to

17  defer deciding on restitution until we can have further

18  briefing and any hearings.

19           I was hoping to combine the schedule on restitution

20  with that of Co-defendant Li, but I'm wondering if that makes

21  sense, and I'll hear from the Government and defense in a

22  moment on that, and I'll tell you what the dates are in a

23  moment.

24           I do have to impose a total special assessment of

25  $400, which is $100 on each count, and that's due immediately.

1          And then lastly, forfeiture has been agreed to in

2     the amount of $168,000 plus $120,000, all of which represents

3     proceeds or ill-gotten gain by Mr. Salguero from the various

4     bribery schemes.

5          As I mentioned earlier, I have been provided with a

6     Preliminary Order of Forfeiture, which reflects at least those

7     amounts, and then also indicates that any other proceeds or

8     assets that are tied to the crimes of conviction will also be

9     subject to forfeiture.

10         MR. NITZE:  And if I may, Your Honor, just for the

11    record, the defendant has satisfied his forfeiture obligation.

12    The $160,000 was paid in the account.  The Government is in

13    the process of working on that account, but from our

14    perspective, he has satisfied that forfeiture obligation.

15         THE COURT:  All right.

16         MR. FREEMAN:  And so the record is clear, although

17    it's been satisfied and it's no longer at issue, it was up to

18    120, not 120.

19         THE COURT:  That is correct, and that's reflected in

20    the order I'm about to sign.

21         Even though the amounts have been satisfied, I will

22    nonetheless issue the order, so that the record is clear and

23    that if there is any attendant paperwork, the order will allow

24    that to take place in terms of turning the money over to the

25    Government.  That has to happen.

```
 1                  All right.  Now, let's turn to restitution for a
 2      moment and talk about a briefing schedule for that.
 3                  Mr. Li's schedule right now is as follows -- you
 4      know, some of it's past due, so that may be a little tricky.
 5      Yeah.  We're probably going to have to set another schedule.
 6      Let's see if we can get -- if we're going to have a hearing,
 7      let's see if we can combine those.
 8                  Remind me, Mr. Nitze, are the victims -- I mean,
 9      FIFA certainly would be the same, but are the victims the same
10      in terms of CONCACAF versus -- I can't remember Mr. Li's
11      regional affiliation.
12                  MR. NITZE:  Yes.  They are -- at the region level,
13      yes, they're the same.
14                  THE COURT:  Okay.  So let's work backwards.  The
15      restitution hearing itself has been set for February 6th.  I
16      think within that, we can probably build in a briefing
17      schedule that would work in this case as well, and therefore,
18      we'd only have to have one hearing, to the extent there may be
19      any witnesses, any experts or anybody else called.
20                  So let's start with the Government's -- or sorry,
21      the defense sentencing -- I'm sorry -- restitution submission.
22                  How much time would you like, Mr. Freeman?
23                  MR. FREEMAN:  (No response.)
24                  THE COURT:  You know, you'll have the benefit -- let
25      me just point this out -- you ought to check Mr. Li's docket,
```

1    because the --

2              MR. FREEMAN:  I already have.

3              THE COURT:  Yeah.  The victims submitted or are due

4    to submit something in December.  That will probably be the

5    most illuminating.  So why don't we set up a filing date for

6    you after that?

7              MR. NITZE:  Would Your Honor like me to have the

8    victims submit on the same date for both Mr. Salguero and

9    Mr. Li?

10             THE COURT:  Yes.  I think that makes perfect sense.

11   I think that's enough time, although I'll hear from them on

12   that.  The argument shouldn't really be any different.  It's

13   joint and several liability.  It's more a question of having

14   to prove actual lost revenue or attorneys' fees or

15   investigation fees that they're going to be claiming.

16             So we'll set that date.  The victims should submit

17   any filings relating to restitution for Mr. Li and

18   Mr. Salguero by December 21st, 2018.  And my hope -- and I'll

19   include this in the instruction -- is that they consult with

20   the Government, so that they can get the Government's approval

21   or not on their requests.

22             Then Government has a filing date of January 11th on

23   its position.  I think what I'll do is make that your

24   deadline, Mr. Freeman, and then --

25             MR. FREEMAN:  January 11th?

```
 1                THE COURT:  Yes, January 11th, 2019, which gives you

 2     about three weeks.

 3                MR. FREEMAN:  I could live with that.

 4                THE COURT:  Okay.  You let me know if that doesn't

 5     work --

 6                MR. FREEMAN:  Okay.

 7                THE COURT:  -- after you see their supplemental

 8     submissions.  You have a head start, I think, based on

 9     everything that's gone before in the other cases, including

10     Mr. Marin and Mr. Napout, as well as the decision I rendered

11     there.

12                Then the Government can file a response I think

13     by -- how about January -- why don't we make it 25th?

14                MR. FREEMAN:  I'm sorry.  I didn't hear that.

15                THE COURT:  That's January 25 for the Government to

16     file its submission, and then any reply by you, Mr. Freeman,

17     or the putative victims will be a week later.  So that will

18     get us very close to the hearing date.

19                MR. NITZE:  If I might, just for a moment?

20                THE COURT:  Yes?

21                MR. NITZE:  We're looking at the schedule set for

22     Defendant Li, and unless I have it wrong, I think the

23     December 21st date -- sorry.  The January 11th date on Li's

24     schedule is the date by which the Government responds to

25     victim submissions and then Mr. Li responds to that.
```

```
 1              THE COURT:  Correct.

 2              MR. NITZE:  And so if that is the order of march for

 3   Li, maybe it makes sense to do the same thing, so that the

 4   Government is responding to victims' submissions both for Li

 5   and for Salguero on January 11th, and then both defendants

 6   follow -- or am I misunderstanding?

 7              THE COURT:  No.  You're absolutely right -- and the

 8   reason I was hesitating is because I wanted to give Mr.

 9   Freeman a chance even before the Government -- but you're

10   right that we have it that you're responding to the victims'

11   request before the defense.

12              I mean, I guess that gives you the benefit, Mr.

13   Freeman, of knowing what the Government's position is.  Again,

14   since I was hoping there was a cooperative back scenes

15   situation.

16              MR. NITZE:  I will be in touch.

17              THE COURT:  Yeah.

18              MR. NITZE:  Whether or not we agree, it's a

19   different matter, but I'll certainly be in touch with them.

20              THE COURT:  So let's keep it the same.  The

21   Government will respond to the victims' request for

22   restitution, and state its position on January 11, 2019.  So

23   it's consonant with the one in Mr. Li's case.

24              And then Mr. Freeman, you'll have until January 18th

25   to basically respond to --
```

```
1              MR. FREEMAN:  January 25th or you said the 18th?

2              THE COURT:  Eighteenth, because at that point,

3   you'll have the benefit of everybody's submissions and that's,

4   you know, roughly four weeks from the victim submissions and a

5   week from the Government.

6              And then, the 25th will be the reply date for the

7   victims, and then we'll have the hearing on February 6th.

8              MR. NITZE:  If necessary, I take it?

9              THE COURT:  Yes.

10             MR. NITZE:  Okay.

11             THE COURT:  I mean, I'm anticipating based on how

12  things have gone before, if history is, in fact, a prologue,

13  we should see something, I guess, someone.

14             All right.  I think that covers everything, except

15  on the notice on the right to appeal.  (Confers with clerk.)

16             The sentence I impose of time served is the same for

17  every count of conviction -- all four -- and it's concurrent,

18  as is the two years of supervised release.  It's imposed on

19  each count, but to run concurrently, and the conditions are

20  the same for all four, as well.

21             All right.  So now, Mr. Salguero, let me advise you

22  about your right to appeal.  You can appeal your conviction if

23  you believe that your guilty plea was somehow unlawful or

24  involuntary or if there was some other fundamental defect in

25  the proceedings that you did not waive or give up by pleading
```

1    guilty.

2           Under some circumstances, you can also appeal the

3    sentence that I just imposed, and you have not waived your

4    right to appeal your sentence.  So you can certainly do that

5    if you think there is something defective about the sentence

6    itself.

7           Any Notice of Appeal must be filed within 14 days of

8    the filing of the judgment, which will be the paper that will

9    be docketed that reflects this entire sentence, or within 14

10   days of the filing of a Notice of Appeal by the Government, if

11   the Government chooses to appeal the sentence that I just

12   imposed.

13          If you wish to file an appeal and you go to the

14   clerk's office, they will prepare a Notice of Appeal on your

15   behalf.  And if you cannot afford to pay for the appeal or for

16   appellate counsel, you have the right to apply for the filing

17   fee to be waived or to have Court-appointed counsel.

18          Do you understand your right to appeal?

19          THE DEFENDANT:  Yes.  Thank you.

20          THE COURT:  Are there open counts to be dismissed?

21          MR. NITZE:  There are, Your Honor.  The Government

22   moves to dismiss all the open counts, which I believe are

23   Counts 43, 44, 48, 66, and 67.

24          THE COURT:  All open counts, including the ones just

25   mentioned against Mr. Salguero, will be dismissed.

```
 1            Are there any other matters that we need to resolve

 2    other than restitution?

 3            MR. NITZE:  Just an application, Your Honor.

 4    ████████████████████████████████████████████████████████

 5    ████████████████████████████████████████████████████████

 6    ████████████████  we'd ask leave to have a week to file for

 7    post-redactions, as we did with Defendant Li.

 8            THE COURT:  Yes.  I will grant that and I will also

 9    note that the proceeding has been conducted openly.  There

10    have been people in the gallery throughout; nonetheless, the

11    minutes themselves will be redacted, as appropriate.

12            Okay.  Anything from you, Mr. Freeman?

13            MR. FREEMAN:  No, Your Honor.

14            THE COURT:  Okay.  And let me note in that regard, I

15    mean, the distinction I make and I think the Government has

16    already argued this before, that the existence of a piece of

17    paper versus the attendance of some handful of individuals is

18    quite different in my mind in terms of safety and security

19    risk that they present.  And therefore, I think it's

20    appropriate to only docket the redacted minutes.

21            MR. NITZE:  And my understanding is Probation is

22    willing to see Mr. Salguero today, if you want to get the --

23    whatever paperwork needs to be dealt with.  That would be a

24    step worth addressing now.

25            THE COURT:  All right.  So I'll let Mr. Freeman --
```

```
 1                    MR. NITZE:  You can talk about that --

 2                    THE COURT:  -- and the defendant take care of that.

 3       Start the processing for Mr. Salguero's supervised release --

 4                    MR. FREEMAN:  Yes, of course.

 5                    THE COURT:  -- and maybe they can help him in terms

 6       of talking about deportation.

 7                    Now, here's a question for you, Mr. Freeman, since

 8       we have this somewhat elongated schedule for restitution, are

 9       you going to waive your client's appearance for that, should

10       he choose to go --

11                    MR. FREEMAN:  Yes.

12                    THE COURT:  -- back to Guatemala or somewhere else?

13                    MR. FREEMAN:  Correct.

14                    THE COURT:  All right.  So Mr. Salguero, understand

15       that you would ordinarily have the right to be present for the

16       restitution proceedings, here in court, but your lawyer's

17       telling me that you are willing to give up that right, is that

18       correct?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  Okay.  All right.

21                    THE DEFENDANT:  He is the one I chose to represent

22       me.

23                    THE COURT:  Thank you all very much.

24                    MR. NITZE:  Thank you, Judge.

25                    THE COURT:  Thank you.
```

1          THE DEFENDANT:  Thank you.

2          (Proceedings concluded.)