# UNITED STATES DISTRICT COURT

Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| RAFAEL SALGUERO | ) Case Number: 1:15-cr-00252-PKC |
| | ) USM Number: 87451-053 |

**Date of Original Judgment:** 12/7/2018

*(Or Date of Last Amended Judgment)*

Louis M. Freeman, Retained

Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☑ Modification of Restitution Order (18 U.S.C. § 3664)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 29 2019 ★

BROOKLYN OFFICE

**THE DEFENDANT:**

☑ pleaded guilty to count(s)    1, 42, 47, and 65 of the First Superseding Indictment

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☐ was found guilty on count(s) after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1962(d), | Racketeering Conspiracy | 11/25/2015 | 1 |
| 18 U.S.C. § 1962(c), | | | |
| 18 U.S.C. § 1963(a) | | | |

The defendant is sentenced as provided in pages 2 through  8  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)  all open counts  ☐ is ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/24/2019

Date of Imposition of Judgment

s/PKC

Signature of Judge

Pamela K. Chen,       U.S. District Judge

Name and Title of Judge

3/29/19

Date

DEFENDANT:  RAFAEL SALGUERO
CASE NUMBER:  1:15-cr-00252-PKC

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1349,<br>18 U.S.C. § 1343 | Wire Fraud Conspiracy (UNCAF Region World Cup Qualifiers Schemes (FENAFUTG)) | 11/25/2015 | 42 |
| 18 U.S.C. § 1956(h),<br>18 U.S.C.§1956(a)(2)(A) | Money Laundering Conspiracy (UNCAF Region World Cup Qualifiers Schemes (FENAFUTG)) | 11/25/2015 | 47 |
| 18 U.S.C. § 1349,<br>18 U.S.C. § 1343 | Wire Fraud Conspiracy (CONCACAF Media and Marketing Rights Scheme) | 4/30/2012 | 65 |

Judgment — Page __3__ of __8__

DEFENDANT:  RAFAEL SALGUERO
CASE NUMBER:  1:15-cr-00252-PKC

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

TIME SERVED.

☐  The court makes the following recommendations to the Bureau of Prisons:

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____   ☐  a.m.   ☐  p.m.   on _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____   with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

DEFENDANT: RAFAEL SALGUERO
CASE NUMBER: 1:15-cr-00252-PKC

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

two (2) years.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Judgment—Page __5__ of __8__

DEFENDANT:   RAFAEL SALGUERO
CASE NUMBER:   1:15-cr-00252-PKC

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's Signature  _____     Date  _____

DEFENDANT:  RAFAEL SALGUERO
CASE NUMBER:  1:15-cr-00252-PKC

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall continue to cooperate with the government, as required by his plea agreement.

2. The defendant shall cooperate and abide by all instructions of immigration authorities.

3. If deported/excluded, the defendant may not re-enter the United States illegally.

4. The defendant shall not serve in any official role or position, or hold any title within FIFA, CONCACAF, FENAFUG,or any other professional soccer organization.

AO 245C (Rev. 02/18) Amended Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties
Case 1:15-cr-00252-PKC-RML   Document 1226   Filed 03/29/19   Page 7 of 22 PageID #: 19888
(NOTE: Identify Changes with Asterisks (*))

Judgment — Page __7__ of __8__

DEFENDANT:  RAFAEL SALGUERO
CASE NUMBER:  1:15-cr-00252-PKC

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **JVTA Assessment\*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | $ 400.00 | $ | $ | $ 2,362,411.68 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☑ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| See Attached | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  RAFAEL SALGUERO
CASE NUMBER:  1:15-cr-00252-PKC

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A**  ☑  Lump sum payment of $ __400.00__  due immediately, balance due

☐  not later than _____ , or
☑  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑  Special instructions regarding the payment of criminal monetary penalties:

See attached Restitution Order.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                    **RESTITUTION ORDER**
           - against -                              15-CR-252 (PKC)

EDUARDO LI and RAFAEL SALGUERO,

                     Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

On October 7, 2016, Defendant Eduardo Li ("Li") pled guilty to one count of RICO
conspiracy and two counts of conspiracy to commit wire fraud. On October 27, 2016, Defendant
Rafael Salguero ("Salguero") pled guilty to one count of RICO conspiracy, two counts of wire
fraud conspiracy, and one count of money laundering conspiracy. Li was sentenced on November
13, 2018, and Salguero was sentenced on December 6, 2018. However, pursuant to 18 U.S.C. §
3664(d)(5), the Court deferred ruling on restitution in both cases pending further briefing and
submissions by the government, Li, Salguero, and putative victims. The Court held oral argument
regarding restitution on February 6, 2019.

Before the Court are the restitution requests of the government and putative victims, the
Confederation of North, Central America and Caribbean Association Football ("CONCACAF"),
the Costa Rican Football Federation ("FEDEFUT"), and the Fédération Internationale de Football
Association ("FIFA"), pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C.
§ 3663A, seeking: (1) legal fees and costs incurred responding to government requests during the
investigation and prosecution of Defendants Li and Salguero (CONCACAF); (2) legal fees and
costs relating to the preparation of, and litigation over, restitution requests (CONCACAF and
FIFA); (3) disgorgement of salary and/or benefits paid to Li and Salguero, respectively (FIFA);

(4) funds embezzled by Li (FIFA and FEDEFUT); and (5) disgorgement of bribes received by Salguero (CONCACAF).

**LEGAL STANDARD**[1]

Federal courts "have no inherent power to order restitution" and, therefore, "[a] sentencing court's power to order restitution . . . depends upon, and is necessarily circumscribed by, statute." *United States v. Zangari,* 677 F.3d 86, 91 (2d Cir. 2012). The statute at issue here, the MVRA, provides that a sentencing court "shall order" defendants convicted of specified crimes to "make restitution to the victim[(s)] of the offense" in addition to "any other penalty authorized by law." 18 U.S.C. § 3663A. In relevant part, a defendant must "reimburse the victim[(s)] for lost income[,] . . . transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4). "[R]estitution may be awarded only in the amount of losses directly and proximately caused by the defendant's conduct." *United States v. Gushlak*, 728 F.3d 184, 194–95 (2d Cir. 2013); *see also Zangari*, 677 F.3d at 91 ("Because the purpose of restitution is essentially compensatory, and because the MVRA itself limits restitution to the full amount of each victim's loss, a restitution order must be tied to the victim's actual, provable, loss.") (citations, emphasis, and internal quotation marks omitted) (collecting cases). The government bears the burden of establishing the loss amount under the MVRA, and "[a]ny dispute as to the proper amount . . . of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. §

---

[1] The Court assumes the parties' familiarity with the relevant facts and procedural history in this case and thus refers to them only to the extent necessary for the Court's analysis. In addition, as indicated *infra*, the Court relies on, and incorporates by reference, its November 20, 2018 decision regarding restitution with respect to Defendants Juan Angel Napout and Jose Maria Marin. (Dkt. 1084 ("November 20 Restitution Order").)

3664(e).  However, "the MVRA requires only a reasonable approximation of losses supported by a sound methodology." *Gushlak*, 728 F.3d at 196.

## DISCUSSION

### I.  Which Parties Qualify as Victims Under the MVRA

As an initial matter, the Court finds that FIFA, CONCACAF, and FEDEFUT qualify as victims under the MVRA, because each soccer organization suffered losses as a direct result of the offenses of which Li and Salguero were convicted.  18 U.S.C. § 3663A(a)(2).

### II.  Restitution Owed by Defendant Li

#### A.  FIFA

##### 1.  FIFA – Benefits

FIFA asks that Defendant Li be ordered to pay restitution to reimburse FIFA for 20% of the benefit payments Li received from FIFA during the time that Li was participating in the RICO conspiracy, which amounts to $2,150.  (Dkt. 1148, at 3–4.)  The government supports this request. (Dkt. 1158, at 3.)  Li did not oppose this request in his written submission and conceded it at oral argument.  The Court finds that Li is solely liable for $2,150 to compensate FIFA for 20% of the benefits he received from that organization during his involvement in the criminal conspiracy. (*See* November 20 Restitution Order, at 5–6.)

##### 2.  FIFA – Attorneys' Fees and Expenses Relating to Its Restitution Request as to Li

FIFA also requests restitution in the amount of $7,454.08[2] in attorneys' fees and related expenses for preparing its restitution request and participating in the restitution proceedings

---

[2] Although FIFA made its restitution request in Swiss Francs, for ease and consistency, the Court has converted that request into U.S. dollars at a 1:1 conversion ratio.  Banque Nationale Suisse, "Current interest rates and exchange rates,"

relating to Li. (Dkt. 1148, at 4 (*as amended* at the February 6, 2019 restitution hearing).) The government supports this request. (Dkt. 1158, at 3–4.) Li disputes this request on the basis that the restitution requested by FIFA does not relate to losses caused by Li. (Dkt. 1163.) The Court finds that FIFA has sufficiently justified its fees and expenses relating to its request for restitution from Li.[3] Therefore, Li is solely liable to FIFA for $7,454.08 in fees and expenses relating to FIFA's pursuit of restitution as to him.

### 3.    FIFA – Embezzled Funds

FIFA seeks $172,000 in funds embezzled by Li that FIFA had sent to FEDEFUT to pay for stadium repairs. Because those funds were in excess of what was necessary to make the repairs, they should have been returned to FIFA; instead, Li took the excess funds for himself. The government supports this request, (Dkt. 1158, at 4.), and Li conceded it at oral argument. Therefore, Li is solely liable to FIFA for $172,000 in restitution for funds embezzled by Li.

### B.    CONCACAF

### 1.    CONCACAF – Investigative Fees and Expenses

CONCACAF requests restitution in the amount of $1,478,204.70 in attorneys' fees and expenses in connection with responding to specific investigation requests from the government.

---

https://www.snb.ch/en/iabout/stat/statrep/id/current_interest_exchange_rates (last visited Feb. 22, 2019). Notably, "in recognition of the Court's November 20 Restitution Order," FIFA limited its restitution-related fees request "to those incurred between submitting [its] supplemental request and the hearing . . . scheduled for February 6, 2019." (Dkt. 1148, at 4.) In its supplemental request, filed on December 21, 2018, FIFA requested fees and expenses in the amount of CHF 2933.78, but asked that it be allowed to request additional restitution for fees and expenses incurred thereafter in connection with Li's restitution proceedings. (*Id.*) At oral argument, FIFA updated its restitution request to $7,454.08. FIFA offered to provide a complete accounting of the additional fees at the February 6, 2019 restitution hearing, but the Court did not request one.

[3] Although the Court did not require FIFA to provide an accounting of the additional fees and expenses it incurred relating to restitution in Li's case, the Court finds that the amount being requested by FIFA is reasonable, given the complexity of the legal and factual issues involved.

(Dkt. 1149, at 2.)  As it did in connection with the Napout and Marin sentencings, the government supports this request for restitution.  (Dkt. 1158, at 3.)  Defendant Li opposes it, arguing, in sum and substance, that the majority of these fees and expenses did not relate to the investigation or prosecution of Li's case.[4]  (Dkt. 1162, at 3–4.)

The Court rejects Li's argument.  Having pled guilty to the overarching RICO conspiracy charged in Count I, Li is responsible for all reasonably foreseeable losses to the victims that resulted from the conspiracy, which includes the fees and costs incurred by CONCACAF in assisting the government, at its request, with the investigation and prosecution of that conspiracy.  (*See* November 20 Restitution Order, at n.13 (citing *United States v. Smith*, 513 F. App'x 43, 45 (2d Cir. 2013)).)  Therefore, Li is jointly and severally liable with all convicted co-conspirators for $1,478,204.70 in restitution for attorneys' fees and expenses incurred by CONCACAF during its investigation in response to specific government requests.

### 2.    CONCACAF – Attorneys' Fees and Expenses Relating to Its Restitution Request

CONCACAF requests restitution in the amount of $39,680 in attorney's fees and related expenses for preparing its restitution request and participating in the restitution proceedings relating to Li and his co-conspirators.  (Dkt. 1149, at 2.)  Li would be jointly and severally liable for this amount.  The government supports this request.  (Dkt. 1158, at 3.)  Li disputes this request

---

[4] To the extent Defendant Li complains that CONCACAF's billing records do not show that all of the fees and expenses being claimed related to directly to Li's criminal conduct, the Court rejects that argument for the reasons discussed above.  In addition, the Court found, as reflected in its November 20 Restitution Order, that CONCACAF's billing records were "sufficiently detailed and appear to be relevant to the government's requests for evidence and information relating to [Defendants Napout's and Marin's] investigation and prosecution[,]" for which Li, as a co-conspirator, can be held jointly and severally liable.  (November 20 Restitution Order, at 16.)

on the basis that the restitution requested by CONCACAF does not relate to losses caused by Li. (Dkt. 1163, at 3–4.)  The Court finds that CONCACAF has sufficiently justified its fees and expenses relating to its request for restitution from Li, given that it will be imposed jointly and severally on Salguero and his co-conspirators, and reflects a 20% discount to offset the excessive hourly rates charged by CONCACAF's counsel. (*See* November 20 Restitution Order, at 17–18.) Therefore, Li is jointly and severally liable with all convicted co-conspirators to CONCACAF for $39,380 in fees and expenses relating to CONCACAF's restitution request.

### 3.    CONCACAF – Embezzled Funds

CONCACAF seeks, on behalf of FEDEFUT, $140,000 in funds embezzled by Li that FIFA had sent to FEDEFUT to be used in connection with the 2014 17-Under Women's World Cup Tournament. (Dkt. 1149, at 1–2.)  Because those funds should have gone to FEDEFUT, it (and not FIFA) is entitled to restitution in that amount.  The government and FIFA support this request, (*see* Dkts. 1148, 1158.), and Li concedes it.  Therefore, Li is solely liable to FEDEFUT for $140,000 in restitution for money intended for the 17-Under tournament that Li embezzled.

## III.    Restitution Owed by Defendant Salguero

### A.    FIFA

#### 1.    FIFA – Salary and Benefits

FIFA asks that Defendant Salguero be ordered to pay a total of $829,538.08, which represents 20% of the salary, bonuses, and benefits Salguero received from FIFA between January 2009 and August 2017. (Dkt. 1171, at 1–3.)  The government supports this request. (Dkt. 1158, at 3–4.)  Salguero does not oppose FIFA receiving restitution for this type of loss, but argues that 10% would be a fairer percentage. (Dkt. 1168, at 5.)  The Court rejects this argument for the same reasons explained in the November 20 Restitution Order. (Dkt. 1084, at 4–6).  Therefore, Salguero

is solely liable for $829,538.08 to compensate FIFA for 20% of the salary, bonuses, and benefits he received from FIFA during the period he was involved in the criminal conspiracy.

### 2.   FIFA – Attorneys' Fees and Expenses Relating to Its Restitution Request as to Salguero

FIFA also requests restitution in the amount of $14,988.90[5] in attorneys' fees and related expenses for preparing its restitution request and participating in the restitution proceedings relating to Salguero. (Dkt. 1171, at 4.) The government supports this request. (Dkt. 1158, at 3–4.) Salguero concedes that FIFA is entitled to restitution for the expenses incurred in preparing its restitution request, though he seeks apportionment and consideration of his financial circumstances. The Court finds that FIFA has sufficiently justified its fees and expenses relating to its request for restitution from Salguero and that the requested amount is appropriate as to him. Therefore, Salguero is liable to FIFA for $14,988.90 in fees and expenses relating to FIFA's pursuit of restitution as to Salguero. The Court, however, has considered Salguero's financial resources in deciding on a restitution payment schedule.

### B.   CONCACAF

### 1.   CONCACAF – Investigative Fees and Expenses

CONCACAF requests restitution in the amount of $1,478,204.70 in attorneys' fees and expenses in connection with responding to specific investigation requests from the government. (Dkt. 1177, at 2_3.) The government supports this request for restitution. (Dkt. 1158.) Defendant

---

[5] Again, FIFA made its restitution request in Swiss Francs, which the Court has converted into U.S. dollars at a 1:1 conversion ratio. In its January 25, 2019 supplemental request, FIFA requested CHF 9,352.13 in legal fees and expenses, but asked that it be allowed to request additional restitution for fees and expenses incurred thereafter in connection with Salguero's restitution proceedings. (Dkt. 1171, at 4.) At oral argument, FIFA updated its restitution request to $14,988.90.

Salguero opposes it for the same reasons as argued by Defendant Li.[6] (Dkt. 1168, 7–9.) The Court again rejects these arguments and finds that, having pled guilty to the overarching RICO conspiracy charged in Count I, Salguero is responsible for all reasonably foreseeable losses to the victims that resulted from the conspiracy, which includes the fees and costs incurred by CONCACAF in assisting the government, at its request, with the investigation and prosecution of that conspiracy. *See Smith*, 513 F. App'x at 45. Therefore, Salguero is jointly and severally liable with all convicted co-conspirators for $1,478,204.70 in restitution for attorneys' fees and expenses incurred by CONCACAF during its investigation in response to specific government requests.

### 2. CONCACAF – Attorneys' Fees and Expenses Relating to Its Restitution Request

CONCACAF requests restitution in the amount of $39,680 in attorneys' fees and related expenses for preparing its restitution request and participating in the restitution proceedings relating to Salguero and his co-conspirators. (Dkt. 1152, at 2.) Salguero would be jointly and severally liable for this amount. The government supports this request. (Dkt. 1158, at 3.) Salguero disputes this request on the basis that the restitution requested by CONCACAF does not relate to losses caused by him. (Dkt. 1168, at 7–9.) The Court finds that CONCACAF has sufficiently justified its fees and expenses relating to its request for restitution from Salguero, given that it will be imposed jointly and severally on Salguero and his co-conspirators, and reflects a 20% discount to offset the excessive hourly rates charged by CONCACAF's counsel. (*See* November 20

---

[6] To the extent Defendant Salguero, like Li, complains that CONCACAF's billing records do not show that all of the fees and expenses being claimed related to directly to Salguero's criminal conduct, the Court rejects that argument for the reasons discussed above and reiterates its finding that CONCACAF's billing records were "sufficiently detailed and appear to be relevant to the government's requests for evidence and information relating to [Defendants Napout's and Marin's] investigation and prosecution[,]" for which Salguero, as a co-conspirator, can be held jointly and severally liable. (November 20 Restitution Order, at 16.)

Restitution Order, at 17–18.) Therefore, Salguero is jointly and severally liable with all convicted co-conspirators to CONCACAF for $39,680 in fees and expenses relating to CONCACAF's restitution request.

### 3.    CONCACAF – Bribe Payments

CONCACAF seeks $450,000 in bribes solicited by Salguero and his co-conspirators, Alfred Hawit and Ariel Alvarado, from Full Play heads Hugo and Mariano Jinkis. (Dkt. 1151, at 2–3.) Relying on agency theory, CONCACAF argues that any money that Salguero received in his capacity as CONCACAF's agent "belongs to CONCACAF[]" as the principal. (*Id.*) As the Court stated at oral argument, it rejects this argument.

While CONCACAF argues that it is entitled to recover the full value of any illegal bribe received by its agent, the Court found in its November 20 Restitution Order that the MVRA has been interpreted in this Circuit to require a direct correlation between Salguero's gain and CONCACAF's loss before restitution may be awarded. (Dkt. 1084, at 19–20 (citing *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017).) As the Government points out, CONCACAF cannot come close to meeting this burden because Salguero's criminal conduct did not result in CONCACAF awarding a contract to the bribe payors, *i.e.*, there can be no argument that the bribe amount constitutes a portion of marketing rights sold that was withheld from CONCACAF. (Dkt. 1158, at 3.) The cases cited by CONCACAF in support of its agency theory of restitution are inapposite. Indeed, nearly every case CONCACAF cites addresses the remedy for a civil breach of contract under various state laws. *See, e.g.*, *British Am. & E. Co., Inc. v. Wirth Ltd.*, 592 F.2d 75 (2d Cir. 1979) (addressing the acceptance of a bribe as a breach of contract under New York law);[7] *Excel*

---

[7] In the context of a civil breach of contract dispute, the Second Circuit held in *British American & Eastern Co., Inc.*:

*Handbag Co., Inc. v. Edison Bros. Stores, Inc.*, 630 F.2d 379 (5th Cir. 1980) (recognizing a commercial bribery defense under Florida law in a breach of contract dispute). While CONCACAF does cite one case from the Ninth Circuit supporting the application of agency theory in federal criminal restitution proceedings with respect to bribe payments (Dkt. 1151, at 2–3 (citing *United States v. Gaytan*, 342 F.3d 1010 (9th Cir. 2003)), that theory is foreclosed here by the Second Circuit's more recent decision in *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017).

In *Finazzo*, the panel held that under 18 U.S.C. § 3663A restitution may only be awarded where there is a "direct correlation between the defendant's gain and the victim['s] loss." *Id.* at 117–18. As part of this holding, the Second Circuit reaffirmed that "[t]he goal of restitution, in the criminal context, is 'to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.'" *Id.* at 117 (quoting *United States v. Battista*, 575 F.3d 226, 229 (2d Cir. 2009). In line with this principle, the Court interprets the holding in *Finazzo* as precluding a principal from obtaining an illegal bribe paid to its agent because the principal would not be entitled to receive such a bribe itself, and thus the deprivation of that bribe does not "directly correlate" to the principal's "loss." To find otherwise would be to award a windfall to

> [W]here there is an agency relationship, the principal is entitled to recover any monies paid as commercial bribes to his agent. . . . In addition, where there is an agency relationship, the principal need not show injury through bribe-taking in order to defend against an action by the agent for compensation or to prevail in an action to recover the amount of the bribes. The strong public policy against all kinds of bribery requires that injury be presumed under these circumstances. The acceptance by an agent of secret payments to himself for doing what he is already under an obligation to do is obviously destructive to the relationship with his principal and contrary to dealing fairly with customers of the principal.

592 F.2d at 79. Notwithstanding the Second Circuit's application of agency theory in the civil context to allow a principal to recover illegal bribes received by its agent, the Court finds that the Circuit's subsequent holding in *Finazzo* renders the agency relationship non-dispositive, if not irrelevant, in deciding whether to award restitution under the MVRA to a principal for bribes accepted by its agent.

CONCACAF, rather than make whole a measurable loss. Accordingly, the Court finds that the agency theory does not apply in this case because it has not been shown that Salguero's acceptance of the bribes caused CONCACAF to lose money to which it was entitled. As the Court held in its November 20 Restitution Order, CONCACAF is only entitled to restitution for lost revenue if it can show that the bribery accepted by Salguero and his co-conspirators caused CONCACAF to receive under-valued media rights. (Nov. 20 Restitution Order, at 13–15, 18–23.) Therefore, Salguero is not liable to CONCACAF for the $450,000 in bribes that he solicited to influence the award of media rights to Full Play.

**IV.     Joint and Several Liability**

The Second Circuit has held that "[i]f the court finds that more than [one] defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." *Smith*, 513 F. App'x at 45 (citing 18 U.S.C. § 3664(h)). A district court may impose restitution holding the defendant liable for the "reasonably foreseeable acts of all co-conspirators," even "where the jury had acquitted the defendant as to some aspects of the conspiracy." *United States v. Boyd,* 222 F.3d 47, 50–51 (2d Cir. 2000).

Here, the Court divides the restitution award into two categories: (1) restitution owed solely by either Li or Salguero; and (2) restitution owed jointly and severally by Li, Salguero and the other defendants convicted of the same bribery scheme or schemes. Therefore, Defendants Li's and Salguero's restitution obligations are as follows:

11

### Defendant Li

| Type of Liability | Restitution Owed |
|---|---|
| **Sole Liability** | |
| FIFA | Benefits: $2,150 |
| FIFA | Restitution Request: $7,454.08 |
| FIFA | Embezzled Funds: $172,000 |
| FEDEFUT | Embezzled Funds: $140,000 |
| **Total** | **$321,604.08** |
| | |
| | |
| **Joint and Several Liability with <u>All</u> Convicted Co-conspirators** | |
| CONCACAF | Investigative Expenses: $1,478,204.70 |
| CONCACAF | Restitution Request: $39,680 |
| **Total** | **$1,517,884.70** |
| | |
| **CUMULATIVE TOTAL** | **$1,839,488.78** |

### Defendant Salguero

| Type of Liability | Restitution Owed |
|---|---|
| **Sole Liability** | |
| FIFA | Salary, Bonus & Benefits: $829,538.08 |
| FIFA | Restitution Request: $14,988.90 |
| **Total** | **$844,526.98** |
| **Joint and Several Liability with <u>All</u> Convicted Co-conspirators** | |
| CONCACAF | Investigative Expenses: $1,478,204.70 |
| CONCACAF | Restitution Request: $39,680 |
| **Total** | **$1,517,884.70** |
| | |
| **CUMULATIVE TOTAL** | **$2,362,411.68** |

## V.   Payment Schedule

While 18 U.S.C. § 3664 prohibits the Court from considering "the economic circumstances of the defendant" in determining the proper amount of restitution, the Court may consider the defendant's financial resources and assets, projected earnings and other income, and financial obligations in fashioning a restitution payment schedule.  18 U.S.C. 3664(f)(1)(A)(1)–(2); *see*

12

*Smith*, 513 F. App'x at 45–46 (noting that district courts "ha[ve] the discretion to apportion liability among . . . coconspirators or to hold [a co-conspirator] jointly and severally liable for the full loss caused by the conspiracy").

At the close of the February 6, 2019 restitution hearing, the Court directed the parties to confer regarding a proposed restitution payment schedule for Li and Salguero, respectively.  On February 13, 2019, the government proposed the following schedule for both Defendants:

- Nov. 20, 2019:  The greater of $15,000 or 10% of gross income, if any, received from the date of the restitution order.

- May 20, 2020 and every six months thereafter: 10% of gross income, if any, received since the previous payment date.

(Dkt. 1198, at 1.)  The government explained:

> The payment dates set forth above correspond to the restitution payment dates set by the Court for [Defendants Napout and Marin]. . . . Accordingly, the proposed contemplates that defendants owing restitution will make payments on the same date until the judgements are satisfied.  The government submits this schedule will balance the interest in securing timely payment for victims with the interest in leaving room for additional defendants to contribute to restitution, subject to further scheduling orders and their ability to pay, and for the government to seek approval to use forfeited funds to cover victim losses.

(*Id.*, at 1–2.)  Salguero consents to this schedule.  (*Id.*, at 1.)  Li opposes it and instead proposes that restitution payments be set at $100 per month. (*Id.*)

The Court finds that the restitution payment schedule proposed by the government, and agreed to by Salguero, is appropriate and, as argued by the government, balances the government's and victims' interest in timely payment of restitution with Li's and Salguero's interest in allowing other convicted defendants with whom Li and Salguero are jointly liable to contribute to the repayment of victims' losses.  The Court also finds that the proposed schedule—which mandates restitution payments based on a percentage of each defendant's monthly income—accommodates

13

both Li's and Salguero's personal financial circumstances, as set forth in their respective Presentence Reports. (*See* Dkt. 1055, at ¶¶ 92–96 (Li); Dkt. 1079, at ¶¶ 88–91 (Salguero).)

The Court, therefore, adopts the government's proposed restitution payment schedule for Defendants Li and Salguero.

## CONCLUSION

For the reasons stated herein, the government's motions for restitution as to Defendants Eduardo Li and Rafael Salguero are granted in part and denied in part.  The Court awards the following restitution amounts:

(1) FIFA is entitled to a total of $1,026,131.06 in restitution;

(2) CONCACAF is entitled to a total of $1,517,884.70 in restitution;[8] and

(3) FEDEFUT is entitled to a total of $140,000 in restitution.

Restitution shall be paid by Defendants Li and Salguero, respectively, pursuant to the following schedule:

- By Nov. 20, 2019:  the greater of $15,000 or 10% of Defendant's gross income, if any, received from the date of the restitution order.

- By May 20, 2020 and every six months thereafter: 10% of Defendant's gross income, if any, received since the previous payment date.

SO ORDERED.

/s/Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: February 24, 2019
Brooklyn, New York

---

[8] The restitution owed to CONCACAF by Defendants Li and Salguero is the same as, and not in addition to, the restitution previously awarded to CONCACAF in connection with the sentencings of Defendants Napout and Marin.  By contrast, the restitution owed to FIFA by Li and Salguero is in addition to any restitution previously awarded to FIFA from Napout, Marin, and any other sentenced Defendant.  Thus far, FEDEFUT has not been awarded restitution from any other Defendant.